**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**DANIEL JANKOWSKI**
DCS, Local Office in Vanderburgh County
Evansville, Indiana

**ROBERT J. HENKE**
DCS, Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| K.W., Minor Child, | ) ) | |
| and, | ) ) | |
| D.F., Father, | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 82A04-1210-JT-523 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Renee A. Ferguson, Magistrate
Cause No. 82D01-1205-JT-63

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

D.F. ("Father") appeals the termination of his parental rights to K.W. We affirm.

## Issue

Father raises one issue, which we restate as whether the evidence is sufficient to sustain the termination of his parental rights to K.W.

## Facts

K.W. was born on July 10, 2008, to Father and Ke.W. ("Mother"). On October 29, 2010, while in Georgia, Father physically abused K.W., resulting in severe brain damage, a lacerated liver, damage to her bowels, and bite marks to her back, breast, buttocks, and inner thigh/vaginal area. Father was charged with sixteen criminal offenses, including attempted murder, cruelty to children, aggravated battery, and aggravated assault.

K.W. was hospitalized in Georgia and then was moved to an Indianapolis hospital. There, Mother received training on caring for K.W., including feeding K.W. through her feeding tube. K.W. was released to Mother on January 13, 2011. On February 14, 2011, K.W. arrived at a hospital in Evansville and was severely dehydrated, malnourished, and

feverish. K.W. was removed from Mother's care, and as a result of the incident, Mother was charged with child neglect resulting in serious bodily injury.[1]

The Department of Child Services ("DCS") filed a petition alleging that K.W. was a child in need of services ("CHINS"), which the trial court granted on March 2, 2011. K.W. was placed in foster care, where she has remained. Father has been incarcerated in Georgia since March 2, 2011 and has not seen K.W. since October 29, 2010. In June 2011, Father was found guilty of fifteen of the sixteen charges against him, including the attempted murder and aggravated battery charges. The Georgia court sentenced him to forty years with the last five years suspended to probation. As a condition of probation, Father is not allowed to have contact with K.W. or any other child under the age of ten years old.

On May 30, 2012, DCS filed a petition to terminate Father's parental rights. At a hearing on July 19, 2012, Father appeared by telephone. He testified that his mother could take guardianship of K.W. and that his mother was a licensed foster parent. Father admitted that he had taken prescription medications to control his anger, but he stopped taking them in 2009 because he felt like he did not need the medications anymore. Father also claimed that he was taking barber classes and parenting classes in prison and that he was trying to take a substance abuse class due to his use of marijuana. The current DCS family case manager recommended that Father's rights be terminated because K.W. needs permanency and stability. DCS's plan was for K.W.'s foster parents to adopt her.

---

[1] Mother later pled guilty to Class D felony child neglect, and she voluntarily relinquished her parental rights to K.W.

The trial court entered findings of fact and conclusions thereon granting the petition to terminate Father's parental rights. The trial court found in part:

19. The father is an extremely violent individual and was found by a jury of his peers to have inflicted serious injuries on the Child and to have attempted to murder the Child.

20. Moreover, it is impossible for the father to parent the Child from state prison in Georgia, which even the father admits.

21. The father asks for more time to pursue an appeal of his criminal charges or have the Child wait until he is released. However, the Father should not be given more time. The Child is in need of permanency now. The Child has just turned four (4) years old and sadly has been placed in foster care for roughly half her young life. It is not in the Child's best interest to make the Child continue to wait for a permanent, stable home, until the father is released [from] incarceration.

22. The Court Appointed Special Advocate recommends that the father's rights be terminated.

23. The Child has done very well while in foster care.

24. For these reasons, and based on the Father's history as outlined throughout the findings above, termination of father's parental rights is the permanency plan which is in the best interests of the [child].

App. pp. 15-16. Father now appeals.

## Analysis

Father argues that the evidence is insufficient to sustain the termination of his parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. In re I.A., 934

N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" Id. (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" Id. (quoting Neal v. DeKalb County Div. of Family & Children, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. Id. (citing In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), trans. denied)). Thus, "[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. (quoting D.D., 804 N.E.2d at 265).

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. Id. We consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. Id. (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. Id. We will set aside the trial court's judgment only if

5

it is clearly erroneous.  Id.  A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment.  Id.

Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship."  Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)     that one (1) of the following is true:
>
> > (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)     that termination is in the best interests of the child; and
>
> (D)     that there is a satisfactory plan for the care and treatment of the child.

The State must establish these allegations by clear and convincing evidence.  Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1234 (Ind. 1992).

Father argues that the trial court's conclusion that the conditions that resulted in K.W.'s removal or the reasons for placement outside the home of the parents will not be

remedied is clearly erroneous.[2] In making this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. The trial court can properly consider the services that the State offered to the parent and the parent's response to those services. In re C.C., 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), trans. denied.

First, Father seems to argue that DCS did not make reasonable efforts to provide family services or to preserve and reunify the family. In general, DCS is required to make reasonable efforts to preserve and reunify families during CHINS proceedings. In re H.L., 915 N.E.2d 145, 148 (Ind. Ct. App. 2009) (citing Ind. Code § 31-34-21-5.5). However, "the CHINS provision is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." Id. at 148 n.3. Moreover, we note that, pursuant to Indiana Code Section 31-34-21-5.6(b)(2), reasonable efforts to reunify a

---

[2] Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and subsection (b)(2)(B)(iii) is inapplicable here. Consequently, the DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of the child. The trial court found a reasonable probability that the conditions that resulted in K.W.'s removal and continued placement outside Father's home would not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion. Thus, we need not determine whether the trial court's conclusion that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of K.W. is clearly erroneous. See, e.g., Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 148 n.5 (Ind. 2005); In re T.F., 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), trans. denied.

child with his or her parent are not required if the parent has been convicted of attempted murder of a child. Further, under Indiana Code Section 31-34-21-5.6(b)(3), reasonable reunification efforts are not required if the parent has been convicted of aggravated battery of the child. Thus, reasonable efforts to reunify K.W. with Father were not required.

K.W. was removed from Mother's care due to Mother's neglect of K.W.'s medical and nutritional needs. K.W. could not be placed in Father's care due to Father's severe abuse of her, which had resulted in brain damage and other injuries. Father has been incarcerated since March 2011 and was sentenced to forty years with the last five years suspended to probation as a result of his abuse of K.W. As a condition of probation, Father is not allowed to have contact with K.W. or any other child under the age of ten years old. The trial court found that Father has a history of violence, is extremely violent, has a marijuana addiction, and has failed to address his anger issues. The record supports those findings. As for changed circumstances, Father claimed that he was taking barber classes and parenting classes in prison and that he was trying to take a substance abuse class due to his abuse of marijuana. However, Father's habitual patterns of conduct indicate that the trial court's conclusion regarding whether the conditions that resulted in K.W.'s removal or the reasons for placement outside the home of the parents would be remedied is not clearly erroneous.

Next, Father argues that termination of his parental rights was not in K.W.'s best interests. The DCS was required to prove by clear and convincing evidence that the termination was in the children's best interests. In determining what is in the best

8

interests of a child, the trial court is required to look at the totality of the evidence. A.F. v. Marion County Office of Family & Children, 762 N.E.2d 1244, 1253 (Ind. Ct. App. 2002), trans. denied. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. Id. "[T]he historic inability to provide adequate housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best interests." In re A.H., 832 N.E.2d 563, 570 (Ind. Ct. App. 2005).

Father contends that his mother was willing to accept guardianship of K.W. and that he could not cause K.W. harm because he will be incarcerated for a lengthy period of time. K.W. should not have to wait for permanency until Father is capable of caring for her, if that ever happens. K.W. has progressed in foster care, and the foster parents wish to adopt her. Given Father's abuse of K.W., Father's lengthy incarceration, and Father's violent personality, the trial court's conclusion that termination was in K.W.'s best interests is not clearly erroneous.

## Conclusion

The trial court's termination of Father's parental rights is not clearly erroneous. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.